Estate of Isidor M. Stettenheim, Deceased, Jeremiah T. Mahoney, Robert G. Grey and Alfred Lippmann, Administrators, c.t.a. v. Commissioner.
Estate of Stettenheim v. Commissioner
Docket No. 32571.
United States Tax Court
T.C. Memo 1955-158; 1955 Tax Ct. Memo LEXIS 180; 14 T.C.M. (CCH) 592; T.C.M. (RIA) 55158; June 17, 1955
Jeremiah T. Mahoney, Esq., 100 Broadway, New York, N. Y., and Francis T. Nemac, Esq., for the petitioners. William A. Schmitt, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,513,219.99 in estate tax. The issues for decision are (1) whether the value of the corpus of each of six trusts is includible in the gross estate under section 811 (a), (c), (d) or (f); (2) whether proceeds of 17 policies of insurance on the life of the decedent, in excess of the amounts *182 reported on the estate tax return, are includible in the gross estate under either section 811(c) or section 811(g); and (3) whether the value of a contract between the decedent and Hamlin and Company is includible in the gross estate. The Court concludes from the pleadings, the record and the briefs that there are no other issues for decision. Findings of Fact The estate tax return was filed with the collector of internal revenue for the third district of New York. Isidor M. Stettenheim, the decedent, was born in Germany on June 5, 1855, and he died in New York on June 17, 1946. He came to the United States about 1880 and became a partner in the insurance business in New York City with a man named Hamlin. Isidor and Flora Rich were married on February 4, 1886, when Flora was not quite 21 years of age. They had two children, Ivan born in 1891, and Frederic born on May 3, 1901. Ivan died in 1909. Flora died on June 1, 1931 and Isidor married Daisy Lippmann on February 23, 1935. Daisy survived him. Frederic was married on May 17, 1927, was divorced in 1940, and died from coronary thrombosis in December 1952. He lived with his parents at 910 Fifth Avenue, New York, until the time *183 of his marriage but not thereafter. Two children were born of that marriage, Frederic R., Jr., in December 1928 and Judith in December 1931. The children and their mother survived Frederic. Frederic suffered throughout his life from cerebral palsy. He had great difficulty in learning to walk and talk and never could do either well. He was intelligent, had a keen, clear mind, and, except for the cerebral palsy, was healthy. His parents were always very solicitous about his physical condition and his financial condition. They wanted to make their son financially independent during their lifetimes so that he would feel secure enough to marry and have children. The decedent enjoyed good health throughout his life and never made any transfers of property with any thought of imminent death due to the condition of his health. The decedent incorporated Hamlin and Company on April 20, 1905, after the death of Hamlin. The corporation, (hereinafter called Hamlin), took over the operation of the insurance business previously conducted by the partnership. The decedent was the sole owner of the business at the time it was incorporated and thereafter he dominated and controlled it. Most of *184 the shares of stock of the corporation were in the names of Flora and Frederic from 1920 until after Flora died. Hamlin created an Investment Securities Department in 1922 which was operated separately from the Insurance Department. They both had the same address but the office space was physically separate, separate books of account were kept and separate personnel operated each. The insurance business had dropped off considerably by 1935, and Hamlin had lost several of its best insurance customers. Hamlin & Co. Brokers Inc., (hereafter called Brokers), was incorporated in 1935 to take over and carry on the insurance business. The initial capitalization of Brokers was $10,000 which was supplied by Frederic, and all of the capital stock was issued to him. Frederic was president of Brokers at all times material hereto. Brokers remained in the same office space and made no substantial changes in personnel or in operating methods of the insurance business except that it increased the insurance business which it took over from Hamlin. Isidor was not connected in any way with Brokers. The directors of Brokers met two to three times a year. Isidor, Flora, Frederic and Daisy were directors *185 and officers of Hamlin, as follows: Officer
Director
Isidor
President
1905-1917; 1919-1929
1905-1946
Treasurer
1905-1929
Chairman of the Board
1929-1946
Flora
Vice-President
1918-1922; 1923-1931
1917-1931
Frederic
Vice-President
1922-1929
1922-1951
President
1929-1946
Chairman of the Board
1946-
Daisy
Vice-President
1944-1946
1936-1949 Others who were employees of or attorneys for Hamlin were also officers and directors at various times. Meetings of the Board of Directors were held regularly from 1905 through 1951, varying in number from 2 to 13 per year. Frederic came to the Hamlin office occasionally while he was at Columbia University from 1920 to 1923, but he was merely learning the business and did not participate actively until after he left Columbia. He then came to the office regularly although he generally arrived after 10 a.m. and left between 3 and 4 p.m. He devoted himself to the Insurance Department. Frederic never assumed a position of responsibility or authority in Hamlin. Isidor, Flora and Frederic received salaries from Hamlin during the following years: Isidor, 1917-1930, and 1933-1946; Flora, 1917-1931; *186 and Frederic, 1920-1935 and 1939-1946. Flora attended directors' meetings regularly but did not participate actively in the everyday affairs of Hamlin. Isidor, Flora and Frederic created the following trusts between 1918 and the date of Isidor's death: Name Grantor
Date Created
Isidor M. Stettenheim
March 20, 1918
Isidor M. Stettenheim
June 15, 1921
Isidor M. Stettenheim
May 13, 1922
Isidor M. Stettenheim
May 13, 1924
Isidor M. Stettenheim
February 24, 1925
Isidor M. Stettenheim
February 21, 1927
Isidor M. Stettenheim and
Frederic R. Stettenheim
April 1, 1928
Flora R. Stettenheim
May 7, 1928
Frederic R. Stettenheim
May 12, 1928
Frederic R. Stettenheim
May 19, 1930
Frederic R. Stettenheim
October 30, 1931
Frederic R. Stettenheim
December 24, 1935 The provisions of all of these trusts and the amendments thereto as stipulated are incorporated herein by this reference. Flora and Frederic, in executing each deed of trust, acted of her or his own free will and not from any undue influence of Isidor. The execution of each trust by either Flora or Frederic followed consultation with and advice of counsel. The Commissioner, in determining the *187 deficiency, made the following additions to the gross estate on account of transfers in trust: Transfers
Returned
Determined
Item 1 - 4/1/28 Trust
$65,599.34
$1,234,875.63
Item 2 - 2/21/27 Trust
0.00
1,888,399.64
Item 3 - 15,000 shares Hamlin & Company placed in
trust of 5/7/28 in which Flora R. Stetten-
heim is named as creator
0.00
1,616,122.76
Item 4 - Hamlin & Co. Brokers, Inc., placed in trust of
12/24/35 created by Frederic R. Stetten-
heim
0.00
25,234.90
The items above listed are determined to be includible as part of the gross estate within the provisions of Section 811(a), (c), (d) and (f) of the Internal Revenue Code and the regulations relating thereto. Frederic, Isidor and Daisy entered into an agreement on February 26, 1935, whereby Frederic agreed that if Isidor died leaving Frederic and Daisy surviving him then Frederic would pay the rental on the apartment at 910 Fifth Avenue, New York, or rent on a similar apartment and $1,000 per month to Daisy for her support and maintenance for her life, and would permit her to use during her life the furnishings and art objects in the apartment at the time of Isidor's death. The payments *188 were to be made from the income received by Frederic under the trust agreements of April 1, 1928, and October 30, 1931, and the supplemental agreement of January 28, 1932. Hamlin and Isidor entered into a contract on June 19, 1935, whereby Hamlin agreed that upon the death of the survivor of Isidor and Frederic, it would pay $2,000 per month to Daisy during her lifetime in consideration for Isidor's agreement to continue as chairman of the Hamlin Board of Directors at an annual salary of not in excess of $50,000 so long as his health permitted. Frederic, Isidor and Daisy entered into another agreement on June 25, 1937, whereby the earlier agreement of February 26, 1935, was cancelled, and Frederic promised that if Isidor died survived by Daisy, he, Frederic, would pay her $3,000 per month for her life out of the income received by him from the trust of May 7, 1928, as amended, or if such income was insufficient, from any other income or assets at his command. Frederic's obligation was to terminate upon his death but Daisy was to have the lifetime use of the furnishings and art objects in the apartment at 910 Fifth Avenue. Frederic's promise was expressly conditioned upon the non-exercise *189 or the ineffectual exercise by Isidor of his power of appointment under the May 7, 1928 trust, as amended. Hamlin and Isidor on the same date, June 25, 1937, entered into a new agreement which cancelled their contract of June 19, 1935. Isidor agreed to continue to act as chairman of the Board at an annual salary of not in excess of $50,000 per year in exchange for Hamlin's promise to pay Daisy $3,000 per month for her life following the death of both Frederic and Isidor. Both of the June 25, 1937 contracts were modified by agreements dated December 17, 1942, one entered into by Frederic, Isidor and Daisy, and the other by Hamlin, Isidor and Daisy. The first provided that on the death of Isidor, Frederic would pay Daisy $1,500 per month for her life out of the income of the trusts of February 21, 1927, May 7, 1928 and October 30, 1931, or from such other income or assets at his command, if the income of the trusts was insufficient. Frederic's obligation was to terminate upon his death. The agreement with Hamlin provided that Isidor would continue to serve as Chairman of the Board at an annual salary of not in excess of $36,000 and after his death leaving both Daisy and Frederic surviving *190 him, Hamlin would pay Daisy $1,500 a month for her life or $2,000 per month for her life if Frederic was then dead. The monthly payments to Daisy were to be increased to $2,000 for her life in the event that Frederic died after Isidor. The Commissioner included the amount of $80,528.36 in Isidor's gross estate in determining the deficiency herein. The explanation furnished in the notice of deficiency was as follows: "The value of the annuity of $18,000. payable to Daisy Stettenheim for life, is determined to be $80,528.36 and it is further determined that said total is includible as part of the gross estate within the provisions of the Internal Revenue Code and the regulations relating thereto." The Commissioner, in his notice of deficiency, included in Isidor's gross estate under section 811(c) and (g) the values of the following policies of insurance on Isidor's life, which were payable to beneficiaries other than his estate: Value
Value
at which
Policy
at which
Included by
No.
Returned
Commissioner
Mutual Life Insurance Company of New York
1308248
$3,523.76
$ 7,384.24
Mutual Life Insurance Company of New York
1308250
3,523.76
7,384.24
Equitable Life Assurance Society of the United States
625429
0
8,000.00
Equitable Life Assurance Society of the United States
1559795
0
8,357.00
Mutual Life Insurance Company of New York
281717
0
16,575.00
Mutual Life Insurance Company of New York
304798
0
14,246.27
Security Mutual Life Insurance Company
1957
0
548.15
Manhattan Life Insurance Company of New York
43810
0
2,000.00
Manhattan Life Insurance Company of New York
50025
0
11,050.00
Manhattan Life Insurance Company of New York
65502
0
7,000.00
Washington Life Insurance Company
153690
0
16,575.00
National Life Insurance Company
156137
0
12,675.00
National Life Insurance Company
151538
0
4,285.00
National Life Insurance Company
151539
0
4,285.00
Mutual Benefit Life Insurance Company
807262
0
10,945.41
Union Central Life Insurance Company of Cincinnati, Ohio
560648
0
17,925.00
New York Life Insurance Company
901241
0
50,000.00
*191 The terms of, endorsements on and assignments of all of these policies as stipulated are incorporated herein by this reference. Isidor did not pay the premiums on any of these policies after 1924. He possessed at the time of his death incidents of ownership exercisable either alone or in conjunction with another person in only 5 of the policies as follows: Policy
Company
No.
Incidents of Ownership
Equitable
625429
Change beneficiaries
Equitable
1559795
Change beneficiaries; cash surrender and loan privileges
Security Mutual
1957
Change beneficiaries
Mutual Benefit
807262
Change beneficiaries
Union Central
560648
Change beneficiaries; cash surrender and loan privileges
Isidor possessed all of the incidents of ownership in Mutual Life policies Nos. 1308248 and 1308250 after January 10, 1941, but did not possess any of such incidents at the time of his death. He paid 47.72 per cent of the total premiums on each of these two policies, and 47.72 per cent of the value of each of these policies on the date of his death was reported in the estate tax return filed by the executors of his estate. He possessed no incidents of ownership in any of the *192 other policies in question after January 10, 1941. Mutual Life policies No. 281717 and No. 304798 were assigned on June 7, 1937, by the joint action of Isidor and Frederic, then the beneficiary, to Elinor J. Stettenheim, Frederic's wife. She assigned both policies, on October 26, 1944, to Hamlin. Mutual Life policies No. 1308248 and No. 1308250 were assigned on November 5, 1945, by the joint action of Isidor and Frederic, then the beneficiary, to the Flora R. and Isidor M. Stettenheim Foundation, Inc., a charitable foundation incorporated under the laws of the State of New York on June 21, 1930. Frederic, on January 28, 1932 assigned to the trust created by him on October 30, 1931, all of his right, title and interest as the beneficiary of certain policies of insurance on the life of Isidor, including the remaining 13 policies in issue herein. Only 3 of these policies, Manhattan No. 43810 and No. 50025 and New York No. 901241, were actually assigned to the trustees. The proceeds of the other 10 policies were made payable to the trustee but the policies themselves were not assigned. The stipulation of facts including the exhibits annexed thereto are incorporated herein by this reference. *193 Opinion MURDOCK, Judge: The Commissioner says that the decedent amassed a fortune of approximately $5,000,000 and yet only a small estate was reported to be subject to estate tax, and he concludes that Flora and Frederic, in the holding of stock of Hamlin and in the creation of several trusts, were mere puppets of and were dominated and controlled by Isidor so that the corpus of the trusts of which Flora and Frederic were the nominal creators should be included in the gross estate of Isidor, the real grantor of those trusts. Isidor, Flora and Frederic were a closely knit family with much in common. However, Flora and Frederic were intelligent persons who were adequately informed and aware at all times of what they were doing, and there can be no general sweeping aside of their separate actions upon the theory that they did not do their own will but were mere puppets of Isidor. Indeed there is testimony that Flora probably influenced Isidor to a greater extent than he influenced her. Isidor frequently made the first contact with the attorney when the creation of a trust was under consideration, but thereafter the creator of the trust always consulted with and was fully advised by *194 the reputable attorney. The evidence refutes any inference that Flora or Frederic ever failed to exercise her or his own free will in the creation of any trust. The various trusts can not be considered on a wholesale basis but must be examined separately. It then appears that the trusts escape estate tax principally because they were created many years ago, before the tightening of the estate tax laws. Isidor created a series of trusts, beginning in 1918, which finally resulted in a superseding trust which he created on February 21, 1927. The Commissioner, in determining the deficiency, added to the reported gross estate $1,888,399.64, representing the value of the corpus of that trust. He argues in a general way in his brief that the trust was revocable and therefore within the provisions of section 811(d). Frederic was the life beneficiary of the trust and his issue, if living, were to take the remainder, otherwise the remainder beneficiaries in order were: Flora if living, Isidor if living, or those whom Isidor might designate in his will. The corpus consisted of securities. The value of Isidor's reversionary interest in the corpus of the trust at the date of his death was.00127 *195 per cent of the value of the whole. Isidor retained no power, either alone or in conjunction with any person, to alter, amend or revoke the trust and he did not relinquish any such power in contemplation of his death, within the meaning of section 811(d) of the Internal Revenue Code asit applies to this trust. The Commissioner erred in adding the value of the corpus of the trust to the gross estate under section 811(d). Isidor and Frederic executed a trust instrument dated April 1, 1928, and transferred securities to that trust. The income of the trust was to go to Flora during her life. The only extent to which Isidor was a beneficiary of the trust was that if both he and Frederic survived Flora, then the income after Flora's death was to go to Isidor during the remainder of his life. The other possible beneficiaries of the trust were Frederic, his children and the residuary legatees under the will of Flora. The grantors reserved no power to alter, amend or revoke the trust. The Commissioner, in determining the deficiency, increased the value of the corpus of this trust to be included in the gross estate from $65,599.34, as reported in the estate tax return, *196 to $1,234,875.63. He states in his brief that "both section 811(d) and (c) are applicable" without disclosing just how (d) might be applicable. The evidence shows that it is not applicable. The Commissioner argues further, however, that the instruments of April 1, 1928, October 30, 1931 and January 28, 1932 are interwoven inasmuch as each of them was the handiwork of Isidor. He regards the October 30, 1931 trust as an amendment to the April 1, 1928 trust "which is tantamount to a retention of income for life, and a reservation created after March 3, 1931." Frederic created the October 30, 1931 trust and contributed to it his remainder interest in the April 1, 1928 trust. The Commissioner says that the amendment "changed the devolution to take effect after Isidor's death where formerly it would have terminated at his death, and this brings it within section 811(c)." We are unable to agree that Isidor can be regarded to any extent as the grantor of the trust of October 30, 1931 created by Frederic or of the instrument dated January 28, 1932, relating to the insurance policies. Neither of those instruments was referred to in the notice of deficiency and the evidence fails to show that *197 they have any bearing upon the taxability of the corpus of the trust dated April 1, 1928. The Commissioner has made no valid argument for including more of the corpus of the trust of April 1, 1928 in the gross estate of Isidor than was included in the estate tax return. The Commissioner, in determining the deficiency, added to the reported gross estate $1,616,122.76, representing the value of 15,000 shares of Hamlin stock "placed in trust of 5-7-28 in which Flora R. Stettenheim is named as creator." The Commissioner alleged in an amended answer that only 13,500 instead of 15,000 shares of Hamlin stock were placed in the trust of May 7, 1928. Flora executed a deed of trust dated May 7, 1928, and transferred to herself, Isidor and Frederic, as trustee, 9,000 shares of the stock of Hamlin and her rights thereunder. The trust was irrevocable and no power to alter or amend was retained. Isidor was to receive the income of the trust during his life and thereafter Frederic was to receive it for his life. The principal of the trust, together with any accumulated income, was to go upon the death of the survivor of Isidor and Frederic to the persons designated in Isidor's will as his residuary *198 legatees. Frederic, Isidor and Daisy had entered into a written agreement dated June 25, 1937, in order to provide for the support of Daisy by Frederic after the death of Isidor. The payments which Frederic agreed therein to make to Daisy were "expressly conditioned upon the non-exercise or the ineffectual exercise by the party of the second part [Isidor] of the power of appointment provided for in paragraph 'THIRD' of said trust dated May 7, 1928, as amended." Isidor executed an instrument dated October 20, 1942 whereby he released and renounced his power of appointment under the trust created by Flora on May 7, 1928. The Commissioner argues in his brief that actually Isidor was the transferor to the trust of the 9,000 shares since they were under his dominion and control and in his possession. The Commissioner then states that the transfer was a testamentary disposition by Isidor within sections 811(c), (d) and (f). He does not go into further detail although he concedes with respect to section 811(f) that Isidor's power of appointment had been renounced. The value of the corpus of this trust could not be included in Isidor's estate under any of the provisions of section 811(c), *199 (d) or (f) even if Isidor may be regarded as the transferor of 9,000 shares of stock. The finding has been made from the evidence that the decedent enjoyed good health throughout his life and never made any transfer of property with any thought of imminent death due to the condition of his health. The transfer under consideration was made approximately 18 years before the death of the decedent. The nonexercise of his power of appointment was the consideration for a contract which he entered into in 1937 and he formally released and renounced that power in 1942. The evidence as a whole justifies the conclusion that the corpus of this trust can not be included in the gross estate of Isidor under section 811(c)(1)(A) as a transfer in contemplation of death. Section 811(c)(1) provides that "subparagraph (B) shall not apply to a transfer made before March 4, 1931." This transfer was made prior to March 4, 1931. Section 811(c)(2) provides: "An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1)(C) of this subsection *200 unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property." Isidor had a life estate in the property but he retained no reversionary interest and section 811(c)(1)(C) is inapplicable. See Regulations 105, section 81.17(c). Section 811(d), referring to revocable transfers, does not apply because the enjoyment of this trust was not subject at the date of Isidor's death to any change through the exercise of a power to alter, amend or revoke. The only power retained was with respect to the naming of trustees and such a reservation does not bring the trust within section 811(d). Estate of Robert W. Wier, 17 T.C. 409; cf. Estate of C. Dudley Wilson, 13 T.C. 869, affd. per curiam 187 Fed. (2d) 145. Finally, section 811(f) does not apply because Isidor never exercised any power of appointment with respect to this trust. That section expressly provides that the release of such a power shall not be deemed an exercise *201 thereof. The question of whether or not the decedent should be regarded as the owner of the 9,000 shares at the time they were transferred to this trust is thus immaterial. Frederic executed a deed of trust dated May 12, 1928. The corpus of that trust was supposed to be 1,000 shares of Hamlin stock. The Commissioner in his brief argues that the corpus of that trust should be included in the gross estate, but he made no reference to that trust in the notice of deficiency, and, although he amended his answer three times, he has not raised as an issue for decision in this case the question of whether the value of the corpus of that trust should be included in the gross estate of Isidor. That question not being before the Court is not discussed. The Commissioner, in determining the deficiency, added to the value of the gross estate as reported $25,234.90, representing the value of stock of Brokers which was the corpus of a trust created by Frederic on December 24, 1935. The evidence shows that Frederic incorporated that company, paid $10,000 for its stock, and was its sole stockholder. The corporation carried on the insurance business formerly carried on by Hamlin, and Isidor had nothing *202 to do with the conduct of that business by Hamlin and Co. Brokers Inc. The Commissioner makes no argument in his brief with respect to that trust. The Court assumes that the Commissioner has conceded that he erred by including the value of the corpus of that trust in Isidor's gross estate. The Commissioner by an amended answer also seeks to have included in the gross estate under section 811(a), (c), (d) or (f) the stipulated value of the corpus of a trust created by Frederic on May 19, 1930. The corpus of that trust consisted of objects of art, household furnishings, bric-a-brac and other articles located in the apartment of Isidor and Flora. The deed of trust provided that the trustees were to hold the objects during the life of Frederic subject to the use of the objects by Isidor and Flora during their lives. The objects, upon the death of Frederic, were to go to his issue if living, but if none survived him then they were to go to the Metropolitan Museum of Art, subject to their use by Isidor or Flora as long as either lived. The trust was modified on April 12, 1931, to eliminate the Metropolitan Museum as the beneficiary and to provide that upon the termination of the trust *203 the objects were to be sold and the proceeds of the sale, together with any unsold objects, were to be delivered to the Stettenheim Foundation. Frederic agreed to provide the funds necessary to maintain the art objects, and he paid premiums on insurance covering the trust corpus. Frederic retained the right to revoke the trust with the consent of either Isidor or Flora, but he made the trust irrevocable by an instrument dated May 23, 1932. He later agreed to permit Daisy to use the art objects during her life. The Commissioner argues that the corpus of this trust is includible in Isidor's gross estate on the ground that he was the owner and transferor of the art objects on May 19, 1930. There is some justification in the record for the Commissioner's contention that Frederic was never actually the owner of the objects transferred to the trust, although there are several instruments in evidence which tend to refute this contention. The point need not be decided because the corpus is not includible in Isidor's gross estate even if he be regarded as the transferor of the art objects to this trust, as the Commissioner contends. The transfer was made approximately 16 years prior to Isidor's *204 death and at a time when he was enjoying good health. The evidence fails to show that this transfer was made in contemplation of death within the meaning of section 811(c)(1)(A). The trust was created prior to March 4, 1931, and the retention of a life estate by Isidor would not be sufficient to include the corpus of the trust in his gross estate under section 811(c)(1)(B). He possessed no reversionary interest in the trust at his death and thus the transfer would not be includible under section 811(c)(1)(C). The power to revoke the trust with the consent of either Isidor or Flora, which Frederic retained, was surrendered by Frederic prior to Isidor's death and no one had the power to revoke the trust at the date of Isidor's death. Thus section 811(d) is inapplicable. Frederic surrendered the power to revoke subsequent to March 4, 1931, but even if Isidor could be considered the transferor of the art objects to the trust, nevertheless he can not be regarded as the person who held the power of revocation. The issue raised by the Commissioner with respect to this trust is decided against the Commissioner. The Commissioner, in determining the deficiency, included the amount of $80,528.36 *205 in the decedent's gross estate as the value of an annuity payable by Hamlin to Daisy for life following Isidor's death. He mentioned no section of the Internal Revenue Code either in the notice of deficiency or in his main brief under which the amount was included. He contends in his reply brief that the value of the annuity is includible on the ground that it was a transfer of property "procured through the performance of services by Isidor alone, with the intent of having it pass at the time of his death. His demise was the operative fact which motivated the promisor's duty to pay and completed the shifting of the economic benefit of the property." It is clear from the terms of the contract of December 17, 1942, that Isidor did not retain either an interest for his life in this annuity or a reversionary interest therein and that, therefore, the value of the annuity at the time of his death is not includible in his estate under either section 811(c)(1)(B) or (C). Cf. Estate of Frederick John Twogood, 15 T.C. 989 (1950), affd. 194 Fed. (2d) 627; Rev. Rul. 158, C.B. 1953-2, 259. The Commissioner has recognized that the value of the right to *206 receive annuity payments pursuant to an agreement entered into between an employee and his employer prior to October 8, 1949, is not taxable under either section 811(a) or section 811(c) where the employee-decedent did not retain a reversionary interest in the property, arising by the express terms of the instrument. Rev. Rul. 260, C.B. 1953-2, 262, 264. The foregoing covers the only argument which the Commissioner has made herein for the inclusion of the annuity in Isidor's gross estate and no other occurs to us. The Commissioner, in determining the deficiency, included in the gross estate the values of 17 policies of insurance taken out on the life of the decedent and gave as one of his explanations that the amounts were includible under section 811(g). He has not been any more specific in his brief but it is apparent that he is relying upon 811(g)(2) rather than upon 811(g)(1). The former refers to proceeds of life insurance receivable by beneficiaries other than the executor of the decedent and provides that (A) the proceeds of such policies shall be included in the gross estate to the extent that the insurance was purchased with premiums paid by the decedent, and *207 (B) the whole proceeds may be included in the gross estate if the decedent possessed at his death any of the incidents of ownership exercisable alone or in conjunction with any other person. The Commissioner did not err in including the proceeds of the following policies in the gross estate under section 811(g)(2)(B), since the stipulated facts show that the decedent at the time of his death retained incidents of ownership in the policies: Company
Numbers
Equitable
625429
Equitable
1559795
Security Mutual
1957
Mutual Benefit
807262
Union Central
560648
Estate of Judson C. Welliver, 8 T.C. 165; Reg. 105, section 81.27(c). Portions of the proceeds of Mutual Life policies #1308248 and #1308250 were reported by the petitioner on its return and the stipulation shows that no greater portions thereof may be included in the gross estate under any provision of section 811(g). The stipulated facts further show that the decedent did not retain any of the incidents of ownership or pay any of the premiums with respect to the other 10 policies after January 10, 1941. Section 404(c) of the Revenue Act of 1942, as amended by section 503(a) of the Revenue *208 Act of 1950, applicable to the estate of this decedent, provides with respect to section 811(g) of the Internal Revenue Code that premiums paid by the decedent prior to January 10, 1941, shall be excluded in determining the portion of the premiums paid by him if at no time after such date he possessed an incident of ownership in the policy. None of the proceeds of those 10 policies can be included in the gross estate of the decedent under section 811(g). The Commissioner also held that the values of the 17 policies were includible in the gross estate of the decedent under section 811(c) without being specific as to which numbered paragraph of that subsection would apply. The only conceivable argument made by the Commissioner in his brief that the proceeds of these policies of insurance are to be included in the gross estate under section 811(c) is that they were transferred in contemplation of death to the trust of October 30, 1931 by an instrument dated January 28, 1932. The decedent's son, Frederic, created the trust and provided that the income therefrom was to be paid to himself for life and then to his children during the life of his son, Frederic, Jr. *209 , with the remainder to Frederic, Sr.'s, issue. The decedent was not a beneficiary of the trust. The corpus consisted originally of some securities and Frederic's remainder interest in another trust, both items transferred to the October 30, 1931 trust by Frederic. Only 13 of the 17 policies in issue were assigned to or made payable to this trust, 2 of the policies having been assigned to Elinor J. Stettenheim and 2 others to the Flora R. and Isidor M. Stettenheim Foundation, Inc. Five of these 13 policies have been held to come within the provisions of section 811(g) and need not be considered further. Five of the remaining 8 policies were never transferred by assignment to the trust, the proceeds due at Isidor's death were merely made payable to the trustees and, therefore, there could have been no transfer in contemplation of death. Manhattan policies #43810 and #50025 were assigned to the trust by Frederic, to whom the policies had been assigned by Isidor on August 10, 1931 following the death of Flora, to whom originally the policies had been assigned provided she survived Isidor. Isidor and Frederic joined in assigning New York Life policy #901241 to the trust since Isidor had *210 previously surrendered the right to change the beneficiary during Frederic's lifetime. The evidence establishes that the purpose of this transfer was in connection with the arrangement of Frederic's financial affairs and to provide his trustees with the lifetime benefits of the policy and was not a transfer by Isidor in the nature of a testamentary disposition. The Commissioner, in determining the deficiency, did not hold that the corpus of this trust was includible in the gross estate of the decedent. Not only has he failed to show that the corpus of this trust is includible in the gross estate under some unidentified provision of section 811(c) but the evidence shows affirmatively that neither it nor any of the individual insurance policies should be included in the gross estate of the decedent under any provision of that section. The petitioner raised issues with respect to a $10,000 item and a $300 item, but no evidence was introduced with respect to them. The Court assumes that they have been waived, but in any event, is not in a position to make any decision favorable to the petitioner with respect to either of them. Decision will be entered under Rule 50.